UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MICHAEL MCFIELD                                                                              PLAINTIFF

VS.                                                         CIVIL ACTION NO. 3:11cv673-DPJ-FKB

MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY                                         DEFENDANT

consolidated with

MICHAEL MCFIELD                                                                              PLAINTIFF

VS.                                                         CIVIL ACTION NO. 3:12cv236-DPJ-FKB

MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY                                         DEFENDANT

ORDER

This employment-discrimination case is before the Court on Defendant Mississippi Department of Public Safety's Motion for Summary Judgment [51]. Plaintiff Michael McField has responded in opposition, and the motion is fully briefed. The Court, having considered the parties' submissions and the applicable law, finds that Defendant's motion should be granted in part and denied in part.

I.      Facts and Procedural History

Plaintiff Michael McField worked as a Highway Patrol Trooper for the Mississippi Department of Public Safety (DPS) between December 2003 and October 2009. During this time, DPS discovered that McField was contacting local law-enforcement agencies and requesting that the local officers work minor accidents DPS assigned to McField. DPS subsequently counseled McField to refrain from this activity. But following two additional incidents on May 2, 2009, DPS Colonel Mike Berthay transferred McField to a neighboring Highway Patrol Troop some 150 miles from his DeSoto-County home. McField apparently

became ill following this transfer, never reported for duty, and was ultimately discharged on October 30, 2009, following a hearing on several other charges filed by one of his supervisors.

According to McField, while he was a trooper he was exposed to various racist remarks by DPS employees and to remarks by Berthay that could suggest racial animus. And after he received his transfer order, McField expressed concerns to both Berthay and DPS Commissioner Stephen Simpson that he believed the transfer was racially motivated and otherwise an undue hardship. Unable to persuade DPS to reverse the transfer order, McField eventually filed his first charge of discrimination with the EEOC on June 20, 2009. McField also filed a second charge on July 20, 2009, after learning that he was the subject of an on-going internal-affairs investigation.

The EEOC issued its determination on April 28, 2010, finding reasonable cause to believe that McField was "involuntarily transferred, harassed, and discharged from his position because of his race (black) and in retaliation for opposing a protected activity." Pl.'s Resp. Opp. [58] Ex. P, EEOC Determination at 1. McField later received a right-to-sue letter from the EEOC and filed this timely complaint alleging that DPS involuntarily transferred him based on race and terminated his employment based on race and in retaliation for engaging in protected activity, all in violation of Title VII.[1]

DPS contends in its motion for summary judgment that McField cannot establish a prima facie case, or alternatively cannot show that its reasons were pretextual or otherwise

---

[1] McField's discrimination complaint was consolidated with his previously-filed complaint premised on violations of the Family Medical Leave Act. Order [18] May 29, 2012. The Court later dismissed those claims with prejudice in an agreed order granting DPS's summary-judgment motion. Order [22] June 15, 2012.

impermissibly motivated. Due to ambiguity in his brief, the Court questioned whether McField intended to proceed under the mixed-motive framework. After a teleconference with counsel, the Court ordered DPS to file a supplemental memorandum addressing the mixed-motive theory. All briefing is now complete, and the Court is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory

3

facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).

III.   Analysis

    A.   Exhaustion

In a footnote in its initial brief, DPS challenges McField's exhaustion of his employment-termination claims. McField asserts that his discrimination and retaliation claims based on his discharge reasonably grow out of his EEOC charges. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 274 (5th Cir. 2008) ("[T]he 'scope' of the judicial complaint is limited to the 'scope' of the *EEOC investigation* which can reasonably be expected to grow out of the charge . . . ." (citation and quotations omitted)). This position is bolstered by the EEOC's determination, which addressed the termination of McField's employment. Pl.'s Resp. Opp. [58] Ex. P, EEOC Determination at 1. DPS has failed to rebut McField's arguments, and the Court finds that they are well taken. Summary judgment on the basis of exhaustion is denied.

    B.   Race Discrimination

Title VII prohibits adverse employment actions "because of an individual's race" or employment actions where race was a "motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(a)(1), (m). A plaintiff may show discrimination either by direct or circumstantial evidence. *Stone v. Parish of E. Baton Rouge*, 329 F. App'x 542, 545 (5th Cir. 2009). "Where a plaintiff produces direct evidence of discrimination, he is 'entitled to bypass the *McDonnell Douglas* burden-shifting framework commonly applied in discrimination cases and proceed directly to the question of liability.'" *Id.*

(quoting *Moore v. U.S. Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995)).  McField has failed to show direct evidence of discrimination and must therefore rely upon circumstantial evidence.[2]

In Title VII cases involving circumstantial evidence, discrimination claims proceed under the *McDonnell Douglas* burden-shifting analysis.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  First, the plaintiff must establish a prima facie case of discrimination. *Turner v. Kan. City S. Ry.*, 675 F.3d 887, 892 (5th Cir. 2012) ("The burden of establishing a prima facie case of disparate treatment is not onerous." (citation and quotations omitted)).  To state a prima facie case, McField must show the following:

> (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.[3]

---

[2]In his deposition, McField testified to allegedly discriminatory comments made by unidentified DPS employees and Berthay.  Workplace comments may be sufficient to show direct evidence of discriminatory intent where they are "'1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'"  *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999) (quoting *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)); *see also Stone*, 329 F. App'x at 546.  Courts continue to apply the four-part *CSC Logic* test where the comments are offered as direct evidence outside of the *McDonnell Douglas* framework.  *Laxton v. Gap Inc.*, 333 F.3d 572, 583 n.4 (5th Cir. 2003).  But McField fails to provide any analysis of these comments under the *CSC Logic* test, nor are the comments sufficient to prove discrimination on their face "without inference or presumption."  *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citation omitted).

[3]A plaintiff may also satisfy the fourth element of the prima facie case by showing that he was replaced by someone outside of his protected class.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).  It is undisputed that DPS never replaced McField with someone outside of his protected group.

*Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009).  Additionally, "[i]n work-rule violation cases, a Title VII plaintiff may establish a prima facie case by showing . . . 'that he did not violate the rule . . . .'"  *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)), *cited with approval by Turner*, 675 F.3d at 892–93.

If the plaintiff establishes a prima facie case, an inference of discrimination is raised, and the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action.  *Lee*, 574 F.3d at 259.  If such a reason is demonstrated, McField must "offer sufficient evidence to create a genuine issue of material fact either (1) that [DPS's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [DPS's] reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [McField's] protected characteristic (mixed-motives alternative)."  *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

       1.    Prima Facie Case

DPS has conceded for this motion that McField was a member of a protected class, qualified for his position, and subject to an adverse employment action.  Only the fourth element of the prima facie case is in dispute.  In order to satisfy the fourth element, McField must show that either (1) a similarly-situated white employee was treated differently, or (2) he did not violate the work rules at issue.  *Turner*, 675 F.3d at 892–93.

           a.      Similarly Situated

Under the similarly-situated standard, McField "'must show that . . . employees [who were not members of the plaintiff's protected class] were treated differently under circumstances "nearly identical" to his.'" *Id.* at 893 (bracket in original) (quoting *Mayberry*, 55 F.3d at 1090). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* (quoting *Lee*, 574 F.3d at 260).

McField has proffered only one comparator, Troy Moses. Although he fails to explain how Moses relates to his discharge claim, McField asserts that Moses was treated differently when DPS deviated from its policy of involuntarily transferring lower-seniority troopers, such as Moses, before higher-seniority troopers like McField. DPS claims no such policy exists, but the dispute is irrelevant to the prima facie case because mere divergence from a prior policy is insufficient to infer discriminatory intent. *See Scales v. Slater*, 181 F.3d 703, 711 (5th Cir. 1999) ("[E]vidence of departures from prior procedures does not suffice to defeat summary judgment in a discrimination case unless there is some evidence that the departures were meant to be discriminatory." (citations omitted)). McField must proffer a sufficient comparator.

McField has failed, however, to make an adequate showing that he and Moses were similarly situated. The details provided about Moses are sparse, and McField only notes that Moses was white, belonged to McField's troop, had less seniority than McField, and was not involuntarily transferred. Pl.'s Mem. [59] at 4. McField never suggests that Moses had a similar

disciplinary history, nor does he address other factors identified in *Lee* as relevant to showing a comparator is similarly situated. *See* McField Dep. at 74 (stating he was unaware if Moses was counseled not to solicit local assistance). McField has therefore failed to show that he and Moses were similarly situated for either the discriminatory-transfer or termination-of-employment claim. *See Lee*, 574 F.3d at 259–60.

      b.  Work-Rule Violation

  McField may alternatively satisfy the fourth element of his prima facie case by creating a genuine dispute of fact that he did not violate the work rule that supposedly precipitated the adverse employment action. *Turner*, 675 F.3d at 893, 895. While McField does not directly argue this point, he does assert in his brief that he did not violate DPS's rules. The Court will therefore consider whether this route satisfies the fourth element of the prima facie case.

  Looking first to the transfer claim, DPS asserts that McField was transferred as a result of contacting local officials and missing a mandatory district meeting. Berry Dep. at 20–24, 26–27. McField does not address his absence from the mandatory meeting, but he does argue that he could not have violated the former work rule because it is an accepted practice to refer minor accidents to local agencies. At the outset, McField consented to involuntarily transfer in his employment application. Def.'s Mot. [51] Ex. 4 to Ex. A, Employment Appl. Excerpt. But even assuming that DPS's reliance on McField's misconduct means that it cannot now point to this consent form, McField's accepted-practice argument is immaterial. DPS specifically counseled McField to refrain from asking local officials to work his assigned accidents. Def.'s Mot. [51] Ex. 1 to Ex. E, Counseling Statement. And after he was counseled, McField contacted two local sheriffs' offices on May 2, 2009, in an apparent effort to persuade them to work his accident for

him.[4]  There is nothing discriminatory about transferring McField for failure to follow prior orders that foreclosed a specific practice.  *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) ("Title VII does not protect employees from the arbitrary employment practices of their employer . . . ." (citation and quotations omitted)).  Therefore McField has failed to state a prima facie case for discriminatory transfer.

McField's discharge is a different issue.  Following an October 28, 2009 hearing that McField failed to attend due to an alleged migraine, DPS issued Special Order 2009-095 terminating McField's employment.  Pl.'s Resp. Opp. [58] Ex. M, Special Order 2009-095.  That order was based on charges filed by Captain Billy McClurg alleging unauthorized leave from duty; insubordination for responding to a May 2, 2009 accident out of uniform; insubordination related to a department-ordered medical exam; and unauthorized use of DPS property.  *Id.* at 1; *see also* Def.'s Mot. [51] Ex. 10 to Ex. A, McClurg Charges.

Although McField does not address the latter two reasons, he contests the charge that he was out of uniform at the accident and was off-duty without an excuse.  His doctors' excuses do not explain his absence on the specified dates, but viewing the record in a light most favorable to McField, the Court finds that he has created a question of fact as to whether he was out of uniform May 2, 2009.  Thus, McField has shown a question of fact as to this basis for his dismissal.

---

[4]Although he disputes that his intent in the latter call was to refer an accident, it is clear from the audio transcript that McField was soliciting assistance.  Def.'s Mem. [53] at 14 (citing McField Dep. at 81–82); *see also* Def.'s Mot. [51] Ex. 5 to Ex. A, Audio Recording.  His self-serving assertions are insufficient to create a genuine dispute of fact.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

### 2. Legitimate, Nondiscriminatory Reason

DPS asserts that referral of accidents to local agencies contrary to direct order, responding to an accident out of uniform, personal use of a patrol car without authorization, and multiple unexcused absences are all nondiscriminatory reasons for terminating McField's employment. Def.'s Mem. [53] at 17–18 (citing cases). DPS has satisfied its burden of production at this stage. *See, e.g.*, *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) ("Job performance is a legitimate, non-retaliatory reason for termination." (citation omitted)).

### 3. Pretext and Mixed Motive

Because DPS has produced legitimate, nondiscriminatory reasons for terminating McField's employment, the burden shifts back to McField to either show that DPS's reasons are pretextual or that race was at least a motivating factor. *Vaughn*, 665 F.3d at 636.

Turning first to pretext, McField boldly claims that several of DPS's "proffered explanation[s are] false or 'unworthy of credence.'" *Id.* at 637 (quoting *Laxton*, 333 F.3d at 578). But as discussed in the previous section, McField offers no response to two of the four reasons. And his evidence fails to create a genuine issue of material fact as to a third—his unexcused absences—because the doctors' excuses he produced do not cover the five-day span cited in Special Order 2009–095. As a result, McField has created a question of fact for only one of the four grounds for his termination. Yet, "[t]o carry this burden, the plaintiff must rebut each nondiscriminatory . . . reason articulated by the employer." *McCoy*, 492 F.3d at 557 (citing

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (other citations omitted)).[5]

Two issues remain that have not been thoroughly briefed but require attention—the EEOC's determination and remarks by DPS employees. As to the EEOC determination, the Court has taken it into consideration, but the agency's reasonable-cause determination without some other showing of pretext is inadequate to defeat summary judgment. *See McDaniel v. IntegraCare Holdings, Inc.*, 901 F. Supp. 2d 863, 871 (N.D. Tex. 2012) (citing *Septimus v. Univ. of Hous.*, 399 F.3d 601, 610 (5th Cir. 2005)) (noting that EEOC determination is insufficient evidence of pretext necessary to avoid summary judgment).

Looking then to the remarks, McField testified in his deposition that several DPS employees, including Berthay, made comments evidencing racial animus. *See generally* Pl.'s Mem. [59] at 2–4 (discussing remarks by DPS employees). Assuming for the moment that McField can satisfy the applicable test, *see Laxton*, 333 F.3d at 583, the remarks alone are insufficient to rebut DPS's legitimate, nondiscriminatory reasons absent some other evidence of pretext. *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003) ("After *Reeves*, . . .

---

[5]The only issue that presented a factual question whether McField violated a work rule was whether he was out of uniform on May 2, 2009. Even assuming DPS misinterpreted the facts, that does not prove pretext. *See Mayberry*, 55 F.3d at 1091 ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."). The inquiry is instead "focused on whether [DPS's] explanation, accurate or not, is 'the real reason' for firing [McField]." *Vaughn*, 665 F.3d at 637 (quoting *Laxton*, 333 F.3d at 579). McField has failed to make such a showing. And whether or not DPS ultimately drew the correct inference, it does not appear that its conclusion was unworthy of credence in light of the video footage following McField's departure from the accident. *See* Def.'s Mot. [51] Ex. 6 to Ex. A, May 2, 2009 Video at 11:55:40–12:28:07.

so long as remarks are not the only evidence of pretext, they are probative of discriminatory intent." (footnote omitted)).  McField has therefore failed to show pretext.

Alternatively, McField can survive summary judgment by showing that race was a motivating factor in DPS's decision to terminate his employment.  As a threshold matter, DPS asserts that McField has failed to properly raise mixed-motives theory in his response.  Although it is true that his brief lacks mixed-motive analysis, McField repeatedly referenced the ability to survive summary judgment by showing that race was a motivating factor.  Pl.'s Mem. [59] 9–10, 15.  And while the analysis leaves holes, it at least provided a sufficient starting point for the Court to address the mixed-motives theory that McField later confirmed during a telephonic conference with counsel.

The remarks by DPS employees are the only discernable evidence in the record of mixed motives.  And relying on the *CSC Logic*'s four-part test for stray remarks, DPS argues in part that the comments are inadequate due to a lack of temporal proximity to McField's discharge.  Def.'s Supp. Mem. [65] at 4–5 (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001)); *accord CSC Logic*, 82 F.3d at 655.  But the Fifth Circuit has recognized that the more flexible two-part test found in *Russell v. McKinney Hospital Venture* is appropriate to gauge remarks offered as circumstantial evidence of discriminatory intent.  *Laxton*, 333 F.3d at 583 & n.4 (citing *Russell*, 235 F.3d at 226); *see also Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 n.5 (5th Cir. 2012) (noting in age-discrimination case that "application of this distinction [between the four- and two-part tests] has been somewhat messy").  *But see Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, —F.3d—, No. 12-30290, 2013 WL 2211656, at *5–6 (5th

Cir. May 21, 2013) (applying *CSC Logic* test in "cat's paw" context for circumstantial-evidence case).

Under the *Russell* test, a plaintiff may offer remarks as circumstantial evidence of discrimination where he can show "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Laxton*, 333 F.3d at 583 (citing *Russell*, 235 F.3d at 226). And unlike the pretext analysis, remarks alone do not appear insufficient to show that an employment decision was tainted with a mixed motive. *See Acker v. DeBoer*, 429 F. Supp. 2d 828, 847 (N.D. Tex. 2006) (applying mixed-motive analysis to ADEA claim), *cited by Reed*, 701 F.3d at 441 n.5, *abrogated in part by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009) (rejecting mixed-motive theory in ADEA cases).

As to the comments, McField contends that Berthay referred to him in 2003 as "boy" in the context of a discussion about racism and Mississippi's state flag. McField Dep. at 184–85. DPS does not dispute McField's characterization of this comment as discriminatory as required under *Russell*'s first prong. *Laxton*, 333 F.3d at 583. Further, Berthay signed the special order that terminated McField's employment and as the Director of DPS was "primarily responsible for the challenged employment action." *Id.*; Berry Dep. at 22–23, 31 (noting Berthay made the final decision). And aside from reiterating its legitimate, nondiscriminatory reasons, DPS has failed to demonstrate that "the same adverse employment decision would have been made regardless of

discriminatory animus." *Rachid*, 376 F.3d at 312 (citation and quotations omitted). Thus, McField's discriminatory-discharge claim survives summary judgment.[6]

    C.    Retaliation

McField's Title VII retaliation claim proceeds under the same burden-shifting framework applicable to his discrimination claim. *McCoy*, 492 F.3d at 557. First, McField must state a prima facie case by showing that (1) he engaged in a protected activity, (2) DPS took an adverse employment action against him, and (3) there was a causal connection between the protected activity and the adverse action. *Id.* If the plaintiff establishes a prima facie case, the burden then shifts to the employer to offer a legitimate, non-retaliatory reason for its actions. *Id.* And if the employer meets this burden of production, the plaintiff must show that he "would not have been fired 'but for' his participation in protected activities." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 660 (5th Cir. 2012) ("[A] plaintiff may avoid summary judgment on 'but for' causation by demonstrating 'a conflict in substantial evidence on this ultimate issue.'" (quoting *Long v. Easfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996))).[7]

---

[6]Given the sufficiency of Berthay's remark to avoid summary judgment, the Court need not address the comments by unidentified DPS employees, training-academy instructor Red Herrington, or other statements attributed to Berthay by fleet-maintenance director Carl Huse. Nonetheless, it is worth noting that McField fails to show that the unnamed employees or Herrington had any influence over the decision to terminate his employment. *Laxton*, 333 F.3d at 583.

[7]The mixed-motive alternative is also available in the Title VII retaliation context. *Smith v. Xerox Corp.*, 602 F.3d 320, 326–30 (5th Cir. 2010). Despite some ambiguity in a heading in McField's memorandum, Pl.'s Mem. [59] at 15, this mere conclusory mention appears insufficient to raise the mixed-motives issue and likewise would be inadequate. McField has not directed the Court to sufficient record evidence to establish that a desire to retaliate was a motivating factor in the employment decisions. *See Aaron v. Town of Smithville*, No. 1:08cv198-D-D, 2009 WL 4730708, at *4–5 (N.D. Miss. Dec. 10, 2009).

Starting with the prima facie case, DPS argues that McField has failed to show a causal connection between his protected activity and the initiation of the internal-affairs investigation, his transfer, and ultimate discharge. As DPS points out in its brief, DPS initiated its internal-affairs investigation on May 4, 2009, and transferred McField on May 20, 2009. Both events occurred prior to McField contacting Berthay and Simpson and filing his first EEOC charge on June 20, 2009. *See Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 386 (5th Cir. 2003) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." (citation and quotations omitted)). Short of conclusory statements that he previously opposed racism within DPS, McField fails to point to any specific protected activity that preceded these employment actions and has therefore failed to state a prima facie case that the transfer and internal-affairs investigation were retaliatory. *See TIG Ins. Co.*, 276 F.3d at 759.

Regarding the discharge, this adverse employment action occurred after McField engaged in protected activity. And McField contends that the temporal proximity between events—three and one-half months—is sufficient for the causation prong at the prima facie stage. There may be a little tension in the reported cases on this theory, but the Court will assume without deciding that McField has stated a prima facie case as to retaliation.

As with the discrimination claim, DPS has offered a legitimate non-retaliatory reason for its decision—performance violations. But McField responds to these reasons with the same pretext arguments this Court has already rejected. Thus, McField has not rebutted each an every non-retaliatory reason. And the only additional argument in support of the retaliation claim is McField's temporal-proximity, causation argument. While there may be some support for

allowing a close temporal proximity to establish a prima facie case of retaliation, the Fifth Circuit has "affirmatively reject[ed] the notion that temporal proximity standing alone can be sufficient proof of but for causation. Such a rule would unnecessarily tie the hands of employers." *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). For these reasons and the reasons discussed above, the Court finds that McField's retaliation claim should be dismissed.

IV. Conclusion

The Court has considered all of the parties' arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Defendant's Motion for Summary Judgment [51] is denied with respect to McField's discriminatory-discharge claim, but is granted with respect to the other claims.

The parties are directed to contact Chambers within 10 days of the entry of this Order to set a trial date and schedule the pretrial conference.

**SO ORDERED AND ADJUDGED** this the 12th day of June, 2013.

                                              s/ *Daniel P. Jordan III*
                                              UNITED STATES DISTRICT JUDGE